UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**BEVERLY CAMERON,**

    Plaintiff,

v.                                      Case No:

**SNAP FINANCE, LLC**,

    Defendant.                     **DEMAND FOR JURY TRIAL**

_____/

**PLAINTIFF'S COMPLAINT
WITH INJUNCTIVE RELIEF SOUGHT**

**COMES NOW**, Plaintiff, **BEVERLY CAMERON** ("Ms. Cameron" or "Plaintiff"), by and through the undersigned counsel, and hereby sues and files this Complaint and Demand for Jury Trial with Injunctive Relief Sought against Defendant, **SNAP FINANCE, LLC** ("Defendant"), and in support thereof states as follows:

*Introduction*

1.    This action arises out of an alleged "Debt" or "Consumer Debt" as defined by Fla. Stat. § 559.55 (6) and Defendant's violations of the Restrictions on Use of Telephone Equipment, 47 U.S.C. § 227 *et. seq.* ("TCPA"), and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.72 *et. seq.* ("FCCPA"), in attempting to collect such Debt by using an automatic telephone dialing system or artificial voice or prerecorded message to call Ms. Cameron's Cellular Telephone after Ms. Cameron repeatedly revoked consent for Defendant to place such calls to her Cellular Telephone, which can reasonably be expected to harass Ms. Cameron.

## *Jurisdiction and Venue*

2. This Court has subject matter jurisdiction over the instant case under 28 U.S.C. §1331.

3. Jurisdiction of this Court also arises under Fla. Stat. § 559.77 (1).

4. Venue lies in this District pursuant to 28 U.S.C. § 1391 (b), as a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## *Parties*

5. Plaintiff, Ms. Cameron, was and is a natural person and, at all times material hereto, is an adult, a resident of Hillsborough County, Florida, and a "debtor" or "consumer" as defined by Fla. Stat. § 559.55 (8).

6. Ms. Cameron is the "called party" as referenced in the TCPA, 47 U.S.C. § 227 (b) (1) (A) (iii), for all calls placed to cellular telephone number 813-***-7425 ("Ms. Cameron's Cellular Telephone").

7. At all times material hereto, Defendant was and is a limited liability company with its principle place of business in the State of UT and its registered agent, MATTHEW HAWKINS, located at 1193 W 2400 S, Salt Lake City, UT 84119.

## *Statements of Fact*

8. In or around February of 2018, Ms. Cameron financed a mattress purchase at Mattress Center located at 2719 Adamo Dr., Tampa, FL 33605, through Defendant, which opened a unique account ("Account").

9. Sometime thereafter, Ms. Cameron lost her job and encountered financial difficulties that caused her to fall behind on her payments towards the Account, incurring an outstanding balance thereunder ("Debt").

10. On or around June 4, 2018, Defendant began placing calls to Ms. Cameron's Cellular Telephone in attempts to collect the Debt.

11. Around the same time, Defendant also began sending text messages to Ms. Cameron's Cellular Telephone in attempts to collect the Debt.

12. On or around June 4, 2018, Defendant also began placing calls to Ms. Cameron's home telephone in attempts to collect the Debt.

13. On or around June 30, 2018, Ms. Cameron spoke to a representative of Defendant and demanded that Defendant not call her again.

14. Despite Ms. Cameron's demand that Defendant stop calling, Defendant continued to place calls to Ms. Cameron's Cellular Telephone and home telephone in attempts to collect the Debt.

15. On July 5, 2018, Ms. Cameron was shocked to discover that Defendant had withdrawn two hundred and eleven dollars ($211.00) from her bank account without Ms. Cameron's knowledge or authorization.

16. The very next day, on July 6, 2018, Ms. Cameron spoke to a representative of Defendant and again demanded that Defendant stop calling Ms. Cameron's Cellular Telephone.

17. During that conversation on July 6, 2018, Defendant's representative told Ms. Cameron that Defendant's "calls will continue until payment is made."

18. Defendant, true to its word, continued to place calls to Ms. Cameron's Cellular Telephone and home telephone in attempts to collect the Debt.

19. On or around July 8, 2018, Ms. Cameron spoke to a representative of Defendant for a third time and demanded that Defendant stop calling her Cellular Telephone and home telephone.

20. Despite Ms. Cameron's repeated demands, Defendant continued to place calls to Ms. Cameron's Cellular Telephone in attempts to collect the Debt.

21. Defendant called Ms. Cameron's Cellular Telephone at least one hundred and forty (140) times during the time period between June 4, 2018 and August 28, 2018.

22. Defendant called Ms. Cameron's Cellular Telephone up to fourteen (14) times in a single day.

23. Defendant called Ms. Cameron's Cellular Telephone from several different telephone numbers, including, but not limited to: 855-296-0213, 386-206-5097, 678-658-2803, 352-310-1539, 470-202-0450, 727-205-3887, 678-658-2802, 386-206-5098.

24. On August 28, 2018, Defendant sent a text message to Ms. Cameron's Cellular Telephone in attempts to collect the Debt.

25. Defendant's August 28, 2018 text message read: "Hello, Beverly. This message is from Snap Finance. Your account is 59 days past due…"

26. All of Defendant's calls and text messages to Ms. Cameron's Cellular Telephone were placed in an attempt to collect the Debt.

27. All of Defendant's calls to Ms. Cameron's home telephone were placed in an attempt to collect the Debt.

28. Ms. Cameron had to change her Cellular Telephone and home telephone numbers due to Defendant's continual debt collection calls.

### *Count 1: Violation of the Telephone Consumer Protection Act*

29. Ms. Cameron re-alleges paragraphs 1-28 and incorporates the same herein by reference.

30. The Restrictions on Use of Telephone Equipment provision, 47 U.S.C. § 227 (b) (1) prohibits any person

> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial prerecorded voice – (iii) to any telephone number assigned to a paging service, cellular telephone service, . . . or any service for which the called party is charged for the call.

31. Ms. Cameron revoked consent to have Defendant call her Cellular Telephone by the use of an automatic telephone dialing system ("ATDS") or artificial voice or prerecorded message on or around June 30, 2018 when she expressly told a representative of Defendant to stop calling her.

32. Ms. Cameron again revoked consent to have Defendant call her Cellular Telephone on or around July 6, 2018, and July 8, 2018.

33. Despite multiple revocations of consent, Defendant thereafter called Ms. Cameron's Cellular Telephone at least one hundred and forty (140) times.

34. Defendant did not place any emergency calls to Ms. Cameron's Cellular Telephone.

35. Defendant willfully and knowingly placed non-emergency calls to Ms. Cameron's Cellular Telephone.

36. Ms. Cameron knew that Defendant called Ms. Cameron's Cellular Telephone using an ATDS because she heard a pause when she answered at least one of the first few calls from Defendant on her Cellular Telephone before a live representative of Defendant came on the line.

37. Ms. Cameron knew that Defendant called Ms. Cameron's Cellular Telephone using a prerecorded voice because Defendant left Ms. Cameron at least one voicemail using a prerecorded voice.

38. Defendant used an ATDS when it placed at least one call to Ms. Cameron's Cellular Telephone.

39. Under information and belief, Defendant used an ATDS when it placed at least twenty calls to Ms. Cameron's Cellular Telephone.

40. Under information and belief, Defendant used an ATDS when it placed at least fifty calls to Ms. Cameron's Cellular Telephone.

41. Under information and belief, Defendant used an ATDS when it placed at least seventy five calls to Ms. Cameron's Cellular Telephone.

42. Under information and belief, Defendant used an ATDS when it placed at least one hundred calls to Ms. Cameron's Cellular Telephone.

43. Under information and belief, Defendant used an ATDS when it placed all calls to Ms. Cameron's Cellular Telephone.

44. At least one call that Defendant placed to Ms. Cameron's Cellular Telephone was made using a telephone dialing system that has the capacity to store telephone numbers to be called.

45. At least one call that Defendant placed to Ms. Cameron's Cellular Telephone was made using a telephone dialing system that has the capacity to produce telephone numbers to be called without human intervention.

46. At least one call that Defendant placed to Ms. Cameron's Cellular Telephone was made using a telephone dialing system that uses a random number generator.

47. At least one call that Defendant placed to Ms. Cameron's Cellular Telephone was made using a telephone dialing system that uses a sequential number generator.

48. At least one call that Defendant placed to Ms. Cameron's Cellular Telephone was made using a prerecorded voice.

49. Defendant has recorded at least one conversation with Ms. Cameron.

50. Defendant has recorded more than one conversation with Ms. Cameron.

51. Defendant has corporate policies and procedures in place that permit it to use an ATDS or artificial voice or prerecorded message to place call individuals to collect alleged debts from said individuals, such as Ms. Cameron, for its financial gain.

52. Defendant has corporate policies and procedures in place that permit it to use an ATDS or artificial voice or prerecorded message, and to place calls to individuals using such devices, just as it did to Ms. Cameron's Cellular Telephone, with no way for the called party and recipient of the calls to permit, elect, or invoke the removal of the

called party and recipient of the calls' cellular telephone number from Defendant's call list.

53. The structure of Defendant's corporate policies and/or procedures permits the continuation of calls to individuals like Ms. Cameron, despite individuals like Ms. Cameron revoking any consent that Defendant believes it may have to place such calls.

54. Defendant knowingly employs methods and has corporate policies and procedures that do not permit the cessation or suppression of calls placed using an ATDS to individual's cellular telephones, like the calls that it placed to Ms. Cameron's Cellular Telephone.

55. Defendant's phone calls harmed Ms. Cameron by trespassing upon and interfering with Ms. Cameron's rights and interests in her Cellular Telephone line.

56. Defendant's phone calls harmed Ms. Cameron by causing her embarrassment.

57. Defendant's phone calls harmed Ms. Cameron by causing her emotional distress.

58. Defendant's phone calls harmed Ms. Cameron by causing her to lose sleep.

59. Defendant's phone calls harmed Ms. Cameron by causing her stress and anxiety.

60. Defendant's phone calls harmed Ms. Cameron by wasting her time.

61. Defendant's phone calls harmed Ms. Cameron by being a nuisance and causing her aggravation.

62. Defendant's phone calls harmed Ms. Cameron by invading her privacy.

63. Defendant's phone calls harmed Ms. Cameron by causing a risk of personal injury to Ms. Cameron due to interruption and distraction.

64. Defendant's phone calls harmed Ms. Cameron by invading her privacy.

65. All conditions precedent to this action have occurred.

**WHEREFORE,** Plaintiff respectfully requests this Court to enter a judgment against Defendant as follows:

a. Awarding statutory damages as provided by 47 U.S.C. § 227 (b) (3) (B), which allows for $500 in damages for each such violation;

b. Awarding treble damages pursuant to 47 U.S.C. § 227 (b) (3) (C);

c. Awarding Plaintiff costs;

d. Ordering an injunction preventing further wrongful contact by the Defendant; and

e. Any other and further relief as this Court deems equitable.

## *Count 2: Violation of the Florida Consumer Collection Practices Act ("FCCPA")*

66. Ms. Cameron re-alleges paragraphs 1-28 and incorporates the same herein by reference.

67. Defendant violated the FCCPA. Defendant's violations include, but are not limited to, the following:

a. Defendant violated Fla. Stat. § 559.72(7) by continuing to place calls to Ms. Cameron's Cellular Telephone despite Ms. Cameron's repeated demands that Defendant cease its calls, which can reasonably be expected to harass Ms. Cameron.

   b.  Defendant also violated Fla. Stat. § 559.72(7) by continuing to place calls to Ms. Cameron's home telephone despite Ms. Cameron's repeated demands that Defendant cease its calls, which can reasonably be expected to harass Ms. Cameron.

   c.  Defendant violated Fla. Stat. § 559.72(9) by withdrawing two hundred and eleven dollars ($211.00) from Ms. Cameron's bank account without Ms. Cameron's authorization, when Defendant knows that it did not have the right to do so.

68. As a result of the above violations of the FCCPA, Ms. Cameron has been subjected to unwarranted and illegal collection activities and harassment for which she has been damaged.

69. Defendant's actions harmed Ms. Cameron by causing her embarrassment.

70. Defendant's actions harmed Ms. Cameron by causing her emotional distress.

71. Defendant's actions harmed Ms. Cameron by causing her to lose sleep.

72. Defendant's actions harmed Ms. Cameron by causing her stress and anxiety.

73. Defendant's actions harmed Ms. Cameron by wasting her time.

74. Defendant's actions harmed Ms. Cameron by being a nuisance and causing her aggravation.

75. Defendant's actions harmed Ms. Cameron by invading her privacy.

76. Defendant's actions harmed Ms. Cameron by causing a risk of personal injury to Ms. Cameron due to interruption and distraction.

77. Defendant's actions harmed Ms. Cameron by invading her privacy.

78. It has been necessary for Ms. Cameron to retain the undersigned counsel to prosecute the instant action, for which she is obligated to pay a reasonable attorney's fee.

79. All conditions precedent to this action have occurred.

**WHEREFORE**, Plaintiff respectfully requests this Court to enter a judgment against Defendant as follows:

 a. Awarding statutory damages as provided by §559.77, Fla. Stat.;

 b. Awarding actual damages;

 c. Awarding punitive damages;

 d. Awarding costs and attorneys' fees;

 e. Ordering an injunction preventing further wrongful contact by the Defendant; and

 f. Any other and further relief as this Court deems equitable.

## DEMAND FOR JURY TRIAL

Plaintiff, **BEVERLY CAMERON**, demands a trial by jury on all issues so triable.

Respectfully submitted this **November 12, 2018**,

/s/ *Michael A. Ziegler*
Michael A. Ziegler, Esq.
Florida Bar No. 74864
mike@zieglerlawoffice.com

/s/ Kaelyn Steinkraus
Kaelyn Steinkraus, Esq.
Florida Bar No. 125132
kaelyn@zieglerlawoffice.com

Law Office of Michael A. Ziegler, P.L.
13575 58th Street North, Suite 129
Clearwater, FL 33760
(p)  (727) 538-4188
(f)  (727) 362-4778
Attorneys and Trial Counsel for Plaintiff